IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 7:19-cv-00147 |
| 1.85 ACRES OF LAND, OWNED BY JACQUELINE J. LUCKI, | ) ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendant. | ) ) ) ) ) ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire a permanent easement and temporary easements on numerous properties, including this property located in Roanoke County. On March 7, 2018, the court entered an order in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. No. 595), granting MVP immediate possession of the easement on this property. The trial of this matter is scheduled to begin on March 16, 2020.

MVP filed a motion in limine, a motion for partial summary judgment on the issue of the larger parcel, and a motion to exclude the testimony of defendant's expert witnesses—Dennis W. Gruelle, Sean Horne, and Tom Franks. Defendant moved for summary judgment on the issue of unity of highest and best use, to exclude the appraisal report of Joseph Thompson, and for an extension of time to respond to MVP's motion in limine. At the hearing on these motions, defendant withdrew her motion for summary judgment, the court granted MVP's motion for summary judgment by agreement of counsel, and the court granted defendant's motion for an

extension of time. (Dkt. Nos. 26, 27.) The court also determined that there was no dispute as to parts six, seven, and eight of MVP's motion in limine. Thus, the court took the following under advisement: parts one through five of MVP's motion in limine, MVP's motion to exclude expert testimony, and defendant's motion to exclude expert testimony. (*See id.*)

For the reasons stated below, MVP's motion in limine will be granted in part and denied in part, MVP's motion to exclude expert testimony will be denied, and defendant's motion to exclude appraisal report will be denied.

## I. BACKGROUND

MVP has condemned an easement over a tract owned by defendant, identified in the main pipeline case complaint as MVP Parcel No. VA-RO-52 (the Property). MVP is taking a permanent easement of 1.10 acres and a temporary workspace of 0.75 acres.

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued an order for MVP to construct, maintain, and operate a natural gas pipeline along a route that includes the Property (the Approved Route). On October 24, 2017, MVP filed an action to condemn easements along the Approved Route on the Property (Easements) under Section 7 of the Natural Gas Act, 15 U.S.C. § 717f. On October 27, 2017, MVP moved for partial summary judgment that it is authorized to condemn the Easements and a preliminary injunction granting immediate possession for construction. On January 31, 2018, the court issued a memorandum opinion and order granting MVP's motion for partial summary judgment and conditionally granting MVP's motion for immediate possession upon a determination of appropriate security. On March 7, 2018, the court set deposits and bonds for the Property and granted MVP immediate possession of the Easements effective upon making the required deposit and posting the required bond.

The subject Property is a 16.76-acre tract located in Roanoke County consisting of about

fifteen acres improved with a single-family residence and an unimproved tract of about 1.75 acres. (Dkt. No. 12-1.) The Property has been used for a single-family home for multiple decades. MVP's expert Joseph Thompson determined a value of $240,000 before the taking and $200,000 after the taking for a total amount of $40,000 in just compensation for the permanent taking, and $1,092 in just compensation for the temporary workspace. (Thompson Appraisal Report page 4 of 123, Dkt. No. 14-1.) Thompson found that the highest and best use for the Property before and after the taking is single-family residential. (*Id.* at 32–35, 53.)

Defendant's expert Dennis Gruelle determined that the highest and best use for the Property was for residential development. (Gruelle Appraisal Report page 17 of 49, Dkt. No. 14-2.) "Reconciling the competing uses, vacant and improved, leads the appraiser to conclude that the highest and best use of the property is for adjustment of the lot line and residential development." (*Id.* at 22.) After condemnation, however, "the subject property loses all opportunity to sell for land value as developable for high-end residential uses." (*Id.* at 37.) According to Gruelle, the Pipeline project "changes the highest and best use from selling for land value with utility to adjust the boundary line and compose two buildable sites to a highest and best use of selling the existing improvements as the only homesite with excess, and unusable, land." (*Id.*) Therefore, Gruelle found the value before the taking to be $225,000 and the value after the taking to be $70,000, for a total amount of $155,000 in just compensation. (*Id.* at 44.) Gruelle did not provide an appraisal amount for the temporary workspace. Defendant's other two experts—Sean Horne, a residential development designer, and Tom Franko, a general contractor for residential development—also found that the highest and best use was for residential development. (Horne Report, Dkt. No. 12-3; Franko Report, Dkt. No. 12-4.) Horne developed a conceptual resubdivision for the Property, about which all three experts intend to testify. This plan is based on relocating the lot line between the

two parcels such that there are two lots of 5.75 acres and 9.05 acres, to be developed separately. (Horne Report page 5 of 18.)

## II.  DISCUSSION

### A.  Legal Standards

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance.  Legal standards regarding the same are set forth herein.

**1.  Just compensation for partial permanent takings, including severance damages**

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005).  When the government condemns private property for a public purpose, it must pay just compensation for that property.  Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss.  *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942).  *See also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act).  The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder." *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v.*

*United States*, 200 F.2d 100, 104 (4th Cir. 1952)). Moreover, "value [of the condemned land] is to be ascertained as of the date of taking." *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

**2. Damages for perceived market negative influences**

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See Mountain Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610 (W.D. Va.), Dkt. No. 55; *Mountain Valley Pipeline, Inc. v. 6.50 Acres of Land Owned by Sizemore Inc. of Va.*, Civil Action No. 7:18-cv-00612 (W.D. Va.), Dkt. No. 66. The court will not repeat that entire analysis here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with

5

regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 3. Just compensation for temporary taking

Just compensation for a temporary taking is limited to the market rental value of the property subject to the temporary taking. *See United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995); *see also Mountain Valley Pipeline, LLC v. 1.89 Acres of Land, Owned by Briarwood Dev't, LLC*, Civil Action No. 7:19-cv-00078, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019). Defendant bears the burden of proving the amount of just compensation. *See United States v. 69.1 Acres*, 942 F.2d 290, 292 (4th Cir. 1991).

### 4. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge

> will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors*

7

*Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

**B. MVP's Motion in Limine**

   **1. Evidence of conceptual resubdivision**

Fair market value is determined by considering the property's "highest and best use," which is the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future." *Olson v. United States*, 292 U.S. 246, 255 (1934); *see also United States v. 1.604 Acres of Land*, 844 F. Supp. 2d 668, 679 (E.D. Va. 2011). "In order for a landowner to claim just compensation based on a proposed use, there must be evidence that the use is reasonably probable within the reasonably near future—and hence, not a speculative use." *1.604 Acres of Land*, 844 F. Supp. 2d at 679 (citing *Olson*, 292 U.S. at 255–57). To determine the highest and best use, the appraiser must analyze whether the use is (1) physically possible, (2) legally permissible, (3) financially feasible, and (4) maximally productive. *Id.*

As discussed above, defendant's experts opine that the highest and best use of the Property is a residential development. In order to meet the analysis requirements to prove a highest and best use, defendant has three experts to show physical possibility, legal permissibility, financial feasibility, and that the use would be maximally productive. In association with these factors, they opine regarding the market need in the reasonably near future. In analyzing this proffered highest and best use, defendant's experts developed a conceptual resubdivision. MVP argues that the highest and best use is the current use of single-family residence. It further argues that the conceptual resubdivision is inadmissible and that any opinion based on it is also inadmissible, citing to this court's opinion in *Mountain Valley Pipeline, LLC v. 1.30 Acres of Land* (*Baker*), Civil Action No. 7:18-cv-00607, 2019 WL 4306981 (W.D. Va. Sept. 11, 2019) (hereinafter *Baker*).

In *Baker*, all parties agreed that the highest and best use was residential development. The issue addressed by the court was the manner in which the property was valued because the Bakers'

expert sought to value the property based on a subdivision that did not exist prior to the take using the "lot method" or "subdivision approach," in which an undivided tract of land is valued based upon how it might be subdivided and sold in the future as smaller parcels. *Id*. at *4–5; *United States v. 6.09 Acres of Land*, 140 F. Supp. 3d 1218, 1247 (N.D. Ala. 2015).

Here, Gruelle is using the conceptual subdivision as evidence of the highest and best use. He is not valuing the pre-take value of the property based on the lot method. It is undisputed that no actual progress has been made toward subdividing the Property, but to prove highest and best use, there is evidence demonstrating the high demand for residential subdivision. Gruelle notes that discussions with brokers and builders in the Roanoke Valley "revealed market growth and substantial activity in the home-building economy," who "confirmed the market is healthy, growing, and that builders are busy keeping up with market demand." (Gruelle Report 16.) There is also evidence that the boundary line adjustment is a reasonable possibility. (Horne Report 2) ("Since Ms. Lucki owns both parcels which share a common property line, the County Zoning Ordinance permits adjustment or relocation of the shared lot lines by plat. Doing so would reconfigure the two parcels into a valid subdivision that would better utilize the land and create two parcels that would both be more equitable and usable."). Therefore, the court will not exclude evidence of conceptual subdivision in this case for purposes of evidence of highest and best use. It may be that a limiting instruction is appropriate, and MVP is welcome to tender such an instruction.

Post-take, Gruelle opines that the highest and best use of the Property is as a single-family residence – its current use. He states that a portion of the Property is no longer suitable for development post-take. For purposes of proving the highest and best use post-take, this is appropriate. It appears, however, that Gruelle may be using the lot method, rather than damage to the whole Property, to value the damage to the Property. That is not proper. Federal courts "have

often been reluctant to allow the lot method to be used to establish market value where the land has not actually been subdivided, and there has been little or no material preparation or development, rendering projections on subdivision and future sales more speculative, and sufficient sales of comparable undeveloped land exist." *6.09 Acres*, 140 F. Supp. 3d at 1250 (collecting cases). Here, it is undisputed that no actual progress has been made towards subdividing the Property, and all that exists is a "conceptual plan showing how this re-subdivision could take place." (Horne Report 2.)

At this point, it is unclear to the court whether Gruelle is using the lot method to value the Property after the take. If he is, his testimony regarding post-take value will be excluded. If he is not, then his testimony will be admissible. The court needs further information, and will likely have to hear from Gruelle, to make this determination. For these reasons, MVP's motion with regard to the conceptual subdivision will be denied in part and taken under advisement in part.

### 2. Evidence of fear and stigma of pipelines and claims that buyers would not purchase the Property because of the Pipeline

Gruelle's report makes various statements pertaining to fear and stigma associated with pipeline easements based on interviews with brokers who stated that "many buyers are afraid of a gas pipeline" and "do not want to look at properties with gas pipelines." (Gruelle Report 36.) Defendant states that Gruelle does not intend to spend an inordinate amount of time testifying about these issues, complaining that MVP isolated three sentences from Gruelle's appraisal report. Even so, the court has excluded such evidence before and will do so again in this case because "[t]here is no evidence linking the alleged diminution of these property sales to fear and stigma as opposed to other factors." *Mountain Valley Pipeline, LLC v. 10.67 Acres of Land by Doe Creek Farm, Inc.*, Civil Action Nos. 7:18-cv-00609, 7:18-cv-00611, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019). Also, "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony." *Mountain Valley Pipeline, LLC v. 1.81*

*Acres of Land* (*Jones*), Civil Action No. 7:19-cv-00151, 2019 WL 3945272, at *6 (W.D. Va. Aug. 21, 2019).

For these reasons, evidence of fear and stigma and claims that buyers would not purchase the Property because of the Pipeline are excluded.

### 3. Claims that the Pipeline is dangerous or unsafe, evidence of other pipeline accidents or incidents

For similar reasons, the court has also excluded this type of evidence, and will do so again in this case. *See Doe Creek*, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019) (excluding evidence because expert did not "rely on market evidence connecting pipeline safety, accidents, and fear and stigma associated with pipeline easements to diminution in value"); *Baker*, 2019 WL 4306981, at *5 (excluding evidence about high consequence areas (HCAs) and the potential impact radius of an explosion area in the event of a pipeline rupture because there is no "evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception thereof, and a diminution in value of the property"); *Jones*, 2019 WL 3945272, at *5 (excluding testimony because "an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace . . . and a diminution in value of the property").

### 4. Evidence of alleged impact and possible damages from construction

Gruelle's report comments on the alleged impact of temporary construction activities, such as the "uncertain" impact of "existing springs, wells, drainage and (especially in sloping areas) soil compaction." (Gruelle Report 36.) Defendant responds by stating she does not intend to offer evidence on damages from construction and that MVP takes the statement out of context. Defendant further insists that the project will impact drainage and soil compaction. Because

12

"compensable loss in the eminent domain context is limited to risks that are inherent in the easement," *Doe Creek*, 2019 WL 5929283, at *7, this evidence is excluded. *See also Baker*, 2019 WL 4306981, at *8.

### 5. Evidence of other appraisals

Gruelle's report contains references to a series of opinions by other appraisers: (1) William C. Harvey as to damages on a property in Nelson County; (2) William R. Hopkins, Jr. as to damages to a property in Brunswick County; (3) an appraisal by Wesley Woods prepared for the purpose of estimating security for a different property in the Pipeline project; (4) an appraisal by Jared Schweitzer made for the purpose of estimating security for defendant's parcels; and (5) appraisals on other properties by Robert Gentry and Steven Noble in the "Fenton Inn" litigation. (Gruelle Report 36–37.) MVP argues that these appraisals should be excluded.

First, as to the appraisals of other properties, defendant offers no evidence that the other properties are comparable to the Property at issue in this matter. Therefore, the court agrees that these appraisals should be excluded. *State Highway & Transp. Com'r v. Garland*, 292 S.E.2d 355, 357 (Va. 1982) (requiring evidence that properties were "similar in locality and character to the land in question").

As to the prior appraisal of the subject Property by Schweitzer, MVP argues that estimates of just compensation for the purpose of setting security are not admissible at the trial on just compensation. *See United States ex rel. TVA v. 1.72 Acres*, 821 F.3d 742, 757 (6th Cir. 2016); *United States v. 2,187.43 Acres*, 461 F.2d 938, 940 (8th Cir. 1972); *United States v. 9.85 Acres*, 183 F. Supp. 402, 404 (E.D. Va. 1959). These cases, however, more precisely hold that the amount paid in security is inadmissible, not necessarily the appraisal report that may have been used in aid of arriving at that amount. *See, e.g.*, *2,187.43 Acres*, 461 F.2d at 940 ("The *amount deposited* was

merely an estimated compensation; it did not establish a minimum for an award. Furthermore, it is clear in this case that the 'estimated compensation' paid into the court by the Government was not admissible to contradict the witnesses' lower valuations.") (emphasis added); *1.72 Acres*, 821 F.3d at 757 (stating that the "*estimate* alone is meaningless to the issue of just compensation") (emphasis added); *9.85 Acres*, 183 F. Supp. at 404 ("The payment of 'estimated compensation' into the registry of the Court is nothing more than a compliance with the constitutional rights of the landowner . . . . How the Under Secretary of the Air Force arrived at a figure of $56,100 is unknown and certainly not revealed by the evidence.").

MVP further argues that because the estimate is not admissible, the appraisal upon which the estimate is based is also inadmissible. In support of this contention, MVP relies on a Second Circuit case which, after stating the rule set forth above that "the 'estimated compensation' paid into court by the United States is not admissible to contradict a lower value to which a Government witness testifies at trial," went on to reason that "the amounts paid into court would often reflect appraisals previously obtained, as seems likely to have been true here, and if policy forbids admission of the result, it likewise forbids admission of the source." *United States v. Two Tracts of Land*, 412 F.2d 347, 350 (2d Cir. 1969). Thus, the court affirmed the trial court's refusal to require the government to produce the appraisal that was, presumably, used to arrive at the amount of estimated compensation.

Defendant counters by arguing that granting MVP's motion with respect to the Schweitzer appraisal would cause unfair prejudice because defendant's appraiser reviewed and incorporated his review of the report into his opinion and MVP would be able to avoid explaining its change in opinion on just compensation. Defendant cites cases holding that a prior appraisal of the subject property is admissible as a party-opponent admission. *See, e.g.*, *United States v. 320.0 Acres of*

14

*Land*, 605 F.2d 762, 824–25 (5th Cir. 1979).

The court finds that the Schweitzer appraisal of the Property may be relevant and admissible in this case. The court will not exclude the Schweitzer appraisal merely because it was an appraisal of the Property for purposes of setting the amount of security, which is the only argument made by MVP in its motion. If the appraisal is shown to be relevant and a proper foundation for its admission into evidence is made, then it will not be excluded because it was for purposes of setting security. The court makes no finding at this point whether the appraisal is a party-opponent admission.

Therefore, MVP's motion is granted in all respects except for the Schweitzer appraisal.

**D. Defendant's Motion to Exclude Appraisal Report**

Many of the arguments raised by defendant in this motion criticize Thompson, MVP's expert, for his highest and best use opinion. As noted above, however, defendant withdrew her motion for summary judgment on this issue. Thompson is entitled to give his opinion on highest and best use at trial. *See, e.g.*, *United States v. 275.81 Acres*, No. 09-cv-233, 2013 WL 989956, at *5 (W.D. Pa. Mar. 13, 2013) ("[T]he fact that Jones arrived at a different highest and best use conclusion than Defendant would like is not a basis for excluding Jones' opinion. Defendant's disagreement with and/or perceived weaknesses inherent in Jones' highest and best use analysis are matters of weight, not admissibility.").

The balance of defendant's motion criticizes the comparable sales used by Thompson in his assessment of the before and after value of the Property. As the court has held previously, objections to comparable sales go to the weight of the evidence, not its admissibility. *See Mountain Valley Pipeline, LLC v. 1.81 Acres of Land*, Civil Action No. 7:19-cv-00151, 2019 WL 4007924, at *3 (W.D. Va. Aug. 23, 2019).

**E. MVP's Motion to Exclude Expert Testimony**

MVP separately moves to exclude any expert testimony pertaining to the conceptual resubdivision of defendant's property, discussed herein. For the reasons stated above, this motion will be denied in part and taken under advisement in part.

### III. CONCLUSION

For the reasons stated herein, MVP's motion in limine (Dkt. No. 12) is GRANTED in part and DENIED in part, MVP's motion to exclude expert testimony (Dkt. No. 15) is DENIED, and defendant's motion to exclude appraisal report (Dkt. No. 13) is DENIED.

Entered: March 5, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge